UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WALTER CLARK,<br><br>          Plaintiff<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>          Defendants | Case No.: 2:22-cv-01260-APG-EJY<br><br>**Order (1) Granting Motion to Dismiss, (2) Granting Leave to Amend, and (3) Referring Case to the Pro Bono Program**<br><br>[ECF No. 22] |

Plaintiff Walter Clark sues for events that took place while he was incarcerated at High Desert State Prison. After screening, Clark's remaining claims are an Eighth Amendment failure to protect claim against Lansen De Costa and Salvatore Marino, and an Eighth Amendment deliberate indifference claim against Jane and John Doe nurses. ECF No. 5. At issue in this motion is the failure to protect claim based on De Costa and Marino allegedly failing to protect Clark from being attacked by Anthony Cross, another inmate.

De Costa and Marino move to dismiss, arguing that Clark has not plausibly alleged that Cross posed a substantial risk of harm to Clark because Clark does not allege prior threats or problems related to Cross and because Clark does not allege De Costa and Marino had reason to know of a risk that Cross would attack Clark. Alternatively, De Costa and Marino contend they are entitled to qualified immunity.

Clark responds that De Costa and Marino knew or should have known that Cross posed a danger to him because Cross was "red tagged" due to a prior fighting incident with another inmate and therefore was subject to enhanced security measures. He asserts that these defendants were deliberately indifferent because even though Cross was on lockdown, De Costa

let Cross out of his cell and Marino failed to follow security protocols by not escorting Cross to the shower in handcuffs, and that gave Cross the opportunity to attack him.

I grant De Costa and Marino's motion to dismiss because Clark's complaint does not plausibly allege these defendants were deliberately indifferent. I grant Clark to leave to amend, and I refer this matter to the Pro Bono Program for potential appointment of counsel.

**I. BACKGROUND**

On December 27, 2020, Cross assaulted another inmate, Justin Lane, in the culinary area. ECF No. 6 at 6. Although Cross was the initial aggressor, Lane and another inmate "beat down" Cross. *Id.* Prison officials dismissed fighting charges against Lane after concluding he was not involved in the altercation.[1] *Id.* at 6, 40-43. But prison officials placed Cross on "red tag" or segregation within unit 7B-12, which is a general population unit. *Id.* at 6, 10. According to the complaint, this meant that Cross was on lockdown status "for the safety and security of the institution—for himself and others." *Id.* at 6-7.

Two days later, Clark was informed by De Costa to get ready for work and De Costa subsequently opened Clark's cell door. *Id.* at 4. "[A]ll of a sudden and without warning," Cross attacked Clark with a ten-inch prison knife and a tube sock filled with batteries. *Id.* at 5. Clark was able to defend himself but was stabbed in the hand. *Id.* Marino arrived on the scene and sprayed Cross with "something like mace," which subdued the attack. *Id.* at 5-6.

De Costa allegedly breached security protocols by letting Cross out of his cell to take a shower while other inmates were on the tier. *Id.* at 7. The complaint alleges that because Cross was red tagged, Cross should not have been let out alone and instead Marino should have

---

[1] The defendants misread the complaint as alleging that Cross was found to not have been involved in the altercation. *See* ECF No. 22 at 4.

escorted Cross in handcuffs to and from the shower. *Id.* at 7-8. Clark alleges De Costa and Marino were deliberately indifferent to his safety because they let Cross out on the tier, failed to monitor his whereabouts, and left him free to roam the tier with weapons despite his "red tag" status as a high-risk inmate in a general population unit. *Id.* at 10. Based on these allegations, Clark asserts an Eighth Amendment failure to protect claim against De Costa and Marino.

## II. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted). A prison official's failure to protect one inmate from attacks by another inmate may rise to the level of a constitutional violation if: "(1) the deprivation alleged is objectively, sufficiently serious and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quotation omitted). The defendants do not dispute that the assault on Clark was sufficiently serious. Rather, they contend that Clark has not plausibly alleged that they were deliberately indifferent.

To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Farmer*, 511 U.S. at 837.  The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.*  The prisoner may rely on circumstantial evidence to prove the official knew of the risk. *Id.* at 842.  Additionally, the obviousness of the risk may suffice to establish knowledge. *Id.*

The Ninth Circuit has found no deliberate indifference where the prison official had no reason to suspect an inmate would attack a particular fellow inmate.  For example, the Ninth Circuit found no deliberate indifference where the prison official housed two inmates together, even though one of them had recently attacked another inmate, because the official did not know the attacking inmate's violent history, he knew the attacking inmate and the plaintiff had been celled together previously without incident, and both the attacker and the plaintiff requested to be celled together. *Est. of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1052 (9th Cir. 2002).  Similarly, the Ninth Circuit found no deliberate indifference where the attacker inmate and the plaintiff "had been in general population together for an extended period with no record of any threats or problems between them," even though the plaintiff had been in a fight three days earlier with a member of the attacker's gang. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013).  The attacker was not identified as someone to be housed separately from the plaintiff, and the plaintiff and the inmate he fought with three days earlier both stated their fight was not gang-related and that they resolved their issues. *Id.*  Additionally, although the plaintiff asserted that he told a prison official that he should not be housed with the attacker, he did not identify who he spoke to or what he said, so the court could not "infer that any of the defendants or

4

officials responsible for making the assignment were aware that [the plaintiff] faced a substantial risk of harm." *Id.*; *see also Romero v. Nevada Dep't of Corr.*, 673 F. App'x 641, 645 (9th Cir. 2016) (finding no deliberate indifference where prison official handcuffed the plaintiff immediately prior to another unrestrained inmate stabbing him because "[n]othing in the record suggests that [the official] was aware of [the other inmate's] intention to attack [the plaintiff], or even that [the other inmate] was likely to do so").

In contrast, the Ninth Circuit has found sufficient evidence of deliberate indifference where the officer knew of hostility between the plaintiff and two other inmates and of the plaintiff's protective custody status, but the officer failed to use the required restraints while escorting the plaintiff and the other inmates. *Cortez v. Skol*, 776 F.3d 1046, 1052-53 (9th Cir. 2015). Similarly, the Ninth Circuit concluded that a reasonable jury could find deliberate indifference where prison officials knew the attacking inmate had threatened the plaintiff, yet the two shared a yard; the attacking inmate was not added to the plaintiff's enemies list despite the threats and the plaintiff's request that he be added to that list; and prison officials erroneously told the plaintiff that the attacking inmate was in disciplinary segregation. *Wilk v. Neven*, 956 F.3d 1143, 1149-50 (9th Cir. 2020).

Clark has not plausibly alleged that De Costa and Marino were deliberately indifferent to his safety because, as currently pleaded, his claim is more like the claims the plaintiffs brought in *Estate of Ford* and *Labatad* than *Cortez* and *Wilk*. Clark has not alleged that Cross threatened him, that De Costa or Marino knew of any threats or disagreements between the two inmates, or that they otherwise had reason to suspect Cross might attack Clark. Clark alleges only Cross's status as a segregated inmate. But the mere fact that Cross had attacked another inmate and was in segregation is insufficient to show deliberate indifference absent some reason for the

defendants to suspect Cross posed a particular threat to Clark.  Although De Costa and Marino allegedly did not follow proper procedure, and thus may have been negligent, negligently failing to follow prison procedures is insufficient to show deliberate indifference. *See Est. of Ford*, 301 F.3d at 1052.

Clark asserts in his opposition that he witnessed Cross attack Lane. ECF No. 24 at 1.  I cannot consider this fact because it was not alleged in the complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  But even if I could consider it, Clark does not plausibly allege why this put him at particular risk of attack from Cross or that De Costa and Marino knew that Clark witnessed the attack in the culinary and thus was at risk of Cross attacking him.  I therefore grant De Costa and Marino's motion to dismiss.  Because I dismiss Clark's claim, I need not address qualified immunity at this time.

However, because it is not clear that amendment would be futile, I grant Clark leave to amend. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (quotation omitted)).  The amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court.[2]  The plaintiff is advised to support each claim with factual allegations because all complaints "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  When claims are

---

[2] Consequently, Clark must re-allege his claims against Jane and John Doe nurses in the amended complaint.

alleged against multiple defendants, the complaint should clearly indicate which claims apply to which defendant. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  The plaintiff should specifically identify each defendant and support each claim with factual allegations about each defendant's actions.  Where multiple claims are alleged, the complaint should identify which factual allegations give rise to each particular claim.

     I refer this matter to the Pro Bono Program to see if counsel can be located who will represent Clark in this matter.  This is not a guarantee that a lawyer will represent Clark.  And if Clark does not want a lawyer in this case, he should advise the court immediately so the request can be withdrawn.  Because I am referring this case to the Pro Bono Program, I will give Clark until February 15, 2024 to file an amended complaint.  If counsel appears in the case, counsel may request an extension of time if needed.  **I advise Clark that he must continue to comply with case deadlines, including the February 15, 2024 deadline to amend even though I am referring this case to the Pro Bono Program.**

**III.  CONCLUSION**

     I THEREFORE ORDER that defendants Lansen De Costa and Salvatore Marino's motion to dismiss **(ECF No. 22) is GRANTED**.

     I FURTHER ORDER that plaintiff Walter Clark may file an amended complaint by **February 15, 2024**.  Failure to file an amended complaint by that date will result in Clark's claims against defendants Lansen De Costa and Salvatore Marino being dismissed.

     I FURTHER ORDER that this case is referred to the Pro Bono Program ("Program") adopted in General Order 2017-07 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as pro bono counsel for plaintiff

Walter Clark. The scope of appointment will be for all purposes through the conclusion of trial. By referring this case to the Program, I am not expressing an opinion as to the merits of the case.

      I FURTHER ORDER the clerk of court to forward this order to the Pro Bono Liaison.

      DATED this 9th day of December, 2023.

                                      ANDREW P. GORDON
                                      UNITED STATES DISTRICT JUDGE